**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| DANNY LYNN LITTLEFIELD, | Case No. 2:13-cv-01021-RFB-GWF |
| Plaintiff, | **ORDER** |
| v. | Plaintiff's Motion for Partial Summary Judgment (ECF No. 28) |
| STATE OF NEVADA, EX. REL. DEPARTMENT OF PUBLIC SAFETY, NEVADA HIGHWAY PATROL, | Defendant's Motion for Summary Judgment (ECF No. 29) |
| Defendants. | |

**I.   INTRODUCTION**

This case is before the Court on Plaintiff's Motion for Partial Summary Judgment (ECF No. 28) and Defendant's Motion for Summary Judgment (ECF No. 29). Plaintiff Danny Littlefield claims that he was unfairly discriminated against on the basis of his disability when denied a position as a Department of Public Safety Officer ("DPS") with the Nevada Highway Patrol ("NHP") in March 2012. In his Amended Complaint (ECF No. 9), Plaintiff alleges that the Defendants' actions violated the Americans with Disabilities Act ("ADA") and Nevada anti-discrimination laws. For the reasons stated below, the Court denies both Plaintiff's Motion for Partial Summary Judgment (ECF No. 28) and Defendant's Motion for Summary Judgment (ECF No. 29).

**II.   BACKGROUND**

**A.  Procedural History**

The Plaintiff filed his Complaint on June 10, 2013. ECF No. 1.

On July 5, 2013, the Defendant State of Nevada filed a Motion to Dismiss. ECF No. 8

On July 8, 2013, Plaintiff filed an Amended Complaint. ECF No 9.

On September 24, 2013, the parties met for an Early Neutral Evaluation Conference. No settlement was reached. ECF No. 16.

On April 29, 2014, Plaintiff filed a Motion to Amend his Amended Complaint (ECF No. 25), which the Court denied. ECF No. 39. On January 7, 2014, the Court denied Defendant's Motion to Dismiss as moot in light of the Amended Complaint. ECF No. 21.

On June 23, 2014, Plaintiff filed a Motion for Partial Summary Judgment. ECF No. 28.

On June 26, 2014, Defendant State of Nevada filed a Motion for Summary Judgment. ECF No. 29.

### B. Undisputed Facts

The Court finds the following facts to be undisputed. Plaintiff Danny Littlefield was diagnosed with a retinoblastoma in his right eye when he was six months old. At that time, Mr. Littlefield underwent enucleation, or removal, of the eye. Because of the removal, Mr. Littlefield has only monocular vision.

Mr. Littlefield applied for a position as a Department of Public Safety Officer with the Nevada Highway Patrol ("NHP") on March 19, 2012. He passed initial physical and mental testing, which did not include vision testing.

On or about July 18-20, 2012, Mr. Littlefield underwent a more expansive physical examination, including that his vision was examined. At this time Mr. Littlefield was examined by Dr. Alina Garcia, an employee of ARC Health & Wellness, who certified that Mr. Littlefield was fit for duty. Dr. Garcia did not have the Essential Demands at the time she examined Mr. Littlefield.

Shortly thereafter NHP received notice that Mr. Littlefield was fit for duty. Upon receipt, NHP contacted ARC Health & Wellness and asked whether Mr. Littlefield had been examined and deemed fit for duty pursuant to its Essential Demands. When told no, NHP supplied the Essential Demands and requested that he be reevaluated using them. Upon reconsideration and application of the Essential Demands to Mr. Littlefield, but without any further examination, Dr. Garcia determined that Mr. Littlefield could not meet the essential functions of the position, because he did not have binocular vision.

Following completion of administrative prerequisites, Mr. Littlefield timely filed this Action. Following NHP's Motion to Dismiss, Mr. Littlefield timely filed his Amended Complaint, seeking relief for violation of the Americans with Disabilities Act ("ADA") and Nevada Revised Statute sections 613.330, et seq.

### C. Disputed Facts

The parties dispute when the NHP learned of Plaintiff's monocular vision, and which position NHP believed he was applying for, in the course of the application process. The parties also dispute whether Dr. Garcia was pressured, influenced, or coerced into rewriting her initial evaluation of Plaintiff Littlefield after July 20, 2012.

### IV. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

### V. DISCUSSION

#### A. Defendant's Motion for Summary Judgment, ECF No. 29

Defendant raises three main arguments. The Court addresses each argument below.

### *1. Plaintiff is not a qualified individual*

First, Defendant argues that Mr. Littlefield cannot establish that he is a qualified individual with a disability as defined by the Americans with Disabilities Act and that, alternatively, he is unqualified to perform the essential function of the job with or without reasonable accommodation. Def.'s Mot. Summ. J., ECF No. 29 at 5.

To establish a prima facie case under the Americans with Disabilities Act ("ADA"), a plaintiff must first demonstrate that: "(1) he is disabled within the meaning of the ADA; (2) he is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) he suffered an adverse employment action because of his disability." Samper v. Providence St. Vincent Med. Ctr., 675 F.3d 1233, 1237 (9th Cir. 2012) (citing Allen v. Pac. Bell, 348 F.3d 1113, 1114 (9th Cir. 2003). Under the ADA, "[t]he term 'disability' means, with respect to an individual (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 563 (1999) (quoting 42 U.S.C. § 12102(1)).

Nevada courts apply the ADA approach to plaintiff's state law claims. The Supreme Court of Nevada has held that "[i]n light of the similarity between Title VII of the 1964 Civil Rights Act and Nevada's anti-discrimination statutes, we have previously looked to the federal courts for guidance in discrimination cases." Pope v. Motel 6, 121 Nev. 307, 311, 114 P.3d 277, 280 (Nev. 2005). See also Apececbe v. White Pine Cnty., 615 P.2d 975, 977 (Nev. 1980) (holding that "NRS 613.330(1) is almost identical to s 703(a)(1) of Title VII of the Civil Rights Act of 1964. (42 U.S.C. s 2000e-2(a)(1))" and citing exclusively to federal court jurisprudence); Copeland v. Desert Inn Hotel, 99 Nev. 823, 826, 673 P.2d 490, 492 (1983) ("We approve of the general reasoning of the above [federal] authorities. Like their federal counterparts, the Nevada antidiscrimination statutes have laudable goals and will be broadly construed.").

**a. Disabled under the ADA**

*i.     Major life activity*

The first way one can be qualified as "disabled" under the ADA is for an individual to be substantially limited in a major life activity. The Supreme Court has held that "[w]hile some impairments may invariably cause a substantial limitation of a major life activity, we cannot say that monocularity does." Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 566-67 (1999). The Court explains that monocularity "may embrace a group whose members vary by the degree of visual acuity in the weaker eye, the age at which they suffered their vision loss, the extent of their compensating adjustments in visual techniques, and the ultimate scope of the restrictions on their visual abilities." Id. While "people with monocular vision 'ordinarily' will meet the Act's definition of disability, we simply hold that the Act requires monocular individuals … to prove a disability by offering evidence that the extent of the limitation in terms of their own experience, as in loss of depth perception and visual field, is substantial." Id.

Applying Kirkingburg, the Ninth Circuit has held that "for a monocular individual to show that his impairment is a disability, the impairment must prevent or severely restrict use of his eyesight compared with how unimpaired individuals normally use their eyesight in daily life." E.E.O.C. v. United Parcel Serv., Inc., 306 F.3d 794, 802 (9th Cir.) opinion amended on denial of reh'g, 311 F.3d 1132 (9th Cir. 2002). "Thus, some visual impairment does not necessarily mean that the individual is substantially limited in seeing overall; put differently, it does not follow that seeing as a whole is substantially limited just because the individual has a deficiency in some aspect of vision. The critical inquiry is whether seeing as a whole is substantially limited for purposes of daily living." Id. at 803. In that case, the Court found that neither employee was disabled under the ADA: "Despite not having fully compensated for loss of near-field vision, that impairment does not keep either one of them from using his eyesight as most people do for daily life. Both drive (including for UPS, just not its package cars), read, use tools, and play sports. Accordingly, they do not have an impairment that substantially limits the major life activity of seeing." Id.

In support of their argument that Mr. Littlefield is not disabled under the ADA, the Defendants point to Mr. Littlefield's ability to use his eyesight as unimpaired, binocular people do in their daily lives. For example, Mr. Littlefield states that "I am an accomplished driver, shooter, tennis player, and baseball player.... My monocular vision has never affected my performance of any task whatsoever." Def.'s MSJ, Ex. F, DPS Pre-Hire Medical History Questionnaire.

As further proof of his ability to function as an unimpaired person would, and his condition's lack of impairment on his vision, Mr. Littlefield explains that he has "been able to accommodate for [his] condition, because the enucleation occurred shortly after birth." Id. Further, Plaintiff states that his "vision in his left eye is excellent" and that he has "mastered the use of monocular cues including depth from motion, familiarity of size and perspective." Id.

In his Response, Mr. Littlefield does not address the question of whether or not his impairment severely restricts use of his eyesight compared with how unimpaired individuals normally use their eyesight in daily life. Rather, he maintains that his monocular vision is a per se disability, and focuses his argument on the denial of his application as intentional discrimination.

In light of the clear precedent in Kirkingburg and UPS, the Court finds that Mr. Littlefield has not met his burden in establishing a prima facie case that he is disabled within the meaning of the ADA. On the contrary, the evidence shows that Mr. Littlefield, having been monocular from the age of six months, has been and is able to function as an unimpaired individual in the use of his eyesight in daily life. His excellent acuity in his left eye, coupled with various cues, enables him to perform "any task whatsoever." Def.'s MSJ, Ex. F. The Court is simply left with no evidence to rebut or qualify Mr. Littlefield's own contention that he is not substantially impaired or limited in his major life activities as required by law.

*ii.     Record of an impairment*

The plaintiff does not assert that there is record of such impairment. Therefore, the Court considers the third way in which a person can be considered disabled under the ADA.

*iii.    "Regarded as" having such an impairment*

Pursuant to 42 USC 12102(3)(A), effective January 1, 2009: "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he

or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." As the Ninth Circuit has reasoned, "[i]t offends the ADA as much for a person to be 'regarded as' having a disability, as actually to have one. This is because people should not be rejected on account of myths or stereotypes." UPS, 306 F.3d at 803

After the passage of the current version of § 12102, the Ninth Circuit held that "[i]n order to prevail on her claim that she was terminated on account of her employer's perception of her disability, she must establish that such a perception motivated her termination." McFadden v. Krause, 357 F. App'x 17, 19 (9th Cir. 2009). In that case, the Court found that the plaintiff failed to do so, and that she was terminated on the basis of poor performance. Therefore, Mr. Littlefield may prevail if he establishes that the Defendant subjected him to a prohibited action because of an actual or perceived physical or mental impairment, whether or not the impairment limits or is perceived to limit a major life activity.

Defendant argues that there are no facts indicating that NHP perceived Plaintiff as impaired. Def.'s MSJ at 8. Instead, Defendant argues that "[u]pon learning of his monocular vision, NHP advanced Mr. Littlefield's candidacy and had him examined by a physician. When NHP learned that Dr. Garcia had certified him as fit for duty, it asked ARC Health & Wellness whether it had assessed his candidacy using the Essential Demands. When ARC Health & Wellness replied no, NHP asked that it reassess his candidacy while applying the Essential Demands. Rather than assume that Mr. Littlefield was disabled, or regard him as such, NHP allowed his candidacy to advance and asked that it be reexamined applying the proper criteria." Id. at 8-9; Ex. E. Under those criteria, Mr. Littlefield was rejected.

Plaintiff argues that the reason for his rejection under the proper criteria was "exclusively because of his monocular vision and no other reason." Opp. Brief, ECF No. 33 at 6-7.

The Court has reviewed the record, including Scharn's deposition, and finds that NHP based its decision not to hire Mr. Littlefield because of his monocular vision, pursuant to NHP's established policies or "essential functions" that require that a person applying for Mr. Littlefield's job have binocular vision. Partial Summ. J., ECF No. 28, Ex. 11, p. 21. Therefore, the Court finds

- 7 -

that the Defendant regarded Mr. Littlefield as physically impaired, and rejected him for employment as an officer on that basis.

### b. Qualified individual

In addition to being disabled under the ADA, "[t]o state a claim of discrimination under the ADA, a plaintiff must establish that he or she is a 'qualified individual.'" Rohr v. Salt River Project Agric. Imp. & Power Dist., 555 F.3d 850, 862 (9th Cir. 2009). Section 12111(8) states that "[t]he term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." See Smith v. Clark Cnty. Sch. Dist., 727 F.3d 950, 955 (9th Cir. 2013).

In the Ninth Circuit, determining whether someone is qualified is a two part test. "Qualification for a position is a two-step inquiry. The court first examines whether the individual satisfies the 'requisite skill, experience, education and other job-related requirements' of the position. The court then considers whether the individual 'can perform the essential functions of such position' with or without a reasonable accommodation." Bates v. United Parcel Serv., Inc., 511 F.3d 974, 990 (9th Cir. 2007). The burden of proof lies with the plaintiff. See Smith, 727 F.3d at 957-58 ("To prevail on her ADA claim, Smith bears the burden of proving that she is a qualified individual who can perform the essential functions of a particular job."); Bates, 511 F.3d at 990 ("As the plaintiff, Bates bears the burden to prove that he is 'qualified.'").

Regarding the second step of the Bates test, the essential functions, the Ninth Circuit explains that "[e]ssential functions are 'fundamental job duties of the employment position ... not includ[ing] the marginal functions of the position.' 'If a disabled person cannot perform a job's 'essential functions' (even with a reasonable accommodation), then the ADA's employment protections do not apply. If, on the other hand, a person can perform a job's essential functions, and therefore is a qualified individual, then the ADA prohibits discrimination' with respect to the employment actions." Bates, 511 F.3d at 989. The Court clarified that "'[e]ssential functions' are not to be confused with 'qualification standards,' which an employer may establish for a certain position. Whereas 'essential functions' are basic 'duties,' 'qualification standards' are 'personal and professional attributes' that may include 'physical, medical [and] safety' requirements." Id. at

1  990 (9th Cir. 2007) (internal citations omitted). Furthermore, "consideration shall be given to the
2  employer's judgment as to what functions of a job are essential, and if an employer has prepared a
3  written description before advertising or interviewing applicants for the job, this description shall
4  be considered evidence of the essential functions of the job." 42 USC 12111(8).

5  Determining whether someone is a qualified individual may, as is in the instant case,
6  involve examining across-the-board safety qualification standards. Where such standards are
7  invoked as an affirmative defense, "the question then becomes what proof is required with respect
8  to being a 'qualified individual,' that is, one who can perform the job's essential functions. Before
9  an employee can challenge an employer's qualification standard, however, an employee must first
10 prove that he is a 'qualified individual' within the meaning of the ADA, that is, one who can
11 perform the job's essential functions with or without reasonable accommodation." Bates, 511 F.3d
12 at 989. However, "[a]lthough the plaintiff bears the ultimate burden of persuading the fact finder
13 that he can perform the job's essential functions…an employer who disputes the plaintiff's claim
14 that he can perform the essential functions must put forth evidence establishing those
15 functions…Thus, to the extent that an employer challenges an ADA plaintiff's claim that he can
16 perform the job's essential functions, we think it appropriate to place a burden of production on
17 the employer to come forward with evidence of those essential functions." Id. at 991. In short,
18 "when an employer asserts a blanket safety-based qualification standard—beyond the essential job
19 function—that is not mandated by law and that qualification standard screens out or tends to screen
20 out an individual with a disability, the employer—not the employee—bears the burden of showing
21 that the higher qualification standard is job-related and consistent with business necessity, and that
22 performance cannot be achieved through reasonable accommodation." Id. at 992-93. Thus, in
23 Bates, the Ninth Circuit found that "an employee who shows that he meets the basic qualifications
24 for the package-car driver … and can drive a package car safely, including having a clean driving
25 record and passing the driving test, is an otherwise qualified individual." Id. at 994.

26 The Defendant argues that Mr. Littlefield is not a qualified individual with a disability
27 because, by virtue of his monocular vision, he is unable to perform the essential functions of his
28 job with or without reasonable accommodation. Def.'s MSJ at 9. The Essential Demands of a

1  highway patrol officer require that officers "[m]ust have full range of vision in both eyes
2  correctable to 20/20. Must be able to pass standard color vision testing to be able to identify
3  multiple colors of vehicles." Id., Ex. C, p. 4.  Specifically, NHP's Essential Demands require that
4  a candidate have binocular vision, that each eye have vision correctable to 20/20, and that each
5  eye have uncorrected vision no worse than 20/100. Id. at 9; Ex. C, p. 6. Further, "NHP Chief
6  Dennis S. Osborn avers that there is no essential function that can be waived or ignored so that
7  Mr. Littlefield could be an NHP Officer. Chief Osborn notes that the situations in which binocular
8  vision is needed may occur at any time and without warning. There is no way to accommodate an
9  NHP Officer so that he need not perform certain tasks or duties. There are no functions or
10 responsibilities from which Mr. Littlefield could be excused. The types of activities that require
11 binocular vision are broad and inclusive, including traffic stops, high-speed vehicle pursuit,
12 physical altercation, and arrests." Id. at 9.

13 In response, Plaintiff argues that "[t]here is no dispute Littlefield is a qualified individual
14 with a disability or NHP regarded him as disabled. After all, NHP disqualified Littlefield from
15 employment because it assumed his monocular vision constituted a disability that prevented him
16 from performing a DPS Officer job." Pl.'s Mot. Partial Summ. J., ECF No. 28, at 7; Ex. 11 at
17 32:25, 33:6, 38:9. Plaintiff points to specific portions of a transcript describing the basis for his
18 qualification: "And the specific reason why you, I guess, disqualified…Mr. Littlefield was
19 exclusively because of his monocular vision, correct?" "Yes." "And there was no other reason?"
20 "No." Id., Ex. 11 at p. 32-33. In another instance, the transcript reveals the following exchange:
21 "So you assume that because he has one eye, he's incapable of performing the essential functions
22 of the job, correct?" "Yes." Id. at p. 38.

23 The Court finds that NHP's binocular requirement for DPS officers "is a *facially
24 discriminatory* qualification standard because it focuses directly on an individual's disabling or
25 potentially disabling condition." Bates v. United Parcel Serv., Inc., 511 F.3d 974, 988 (9th Cir.
26 2007). In other words, NHP's Essential Function requiring binocular vision constitutes a "blanket
27 safety-based qualification standard—beyond the essential job function—that is not mandated by
28 law and that qualification standard screens out or tends to screen out an individual with a

disability"—namely, those with monocular vision. Bates, 511 F.3d at 992. Therefore, the question becomes whether NHP has met its "burden of showing that the higher qualification standard is job-related and consistent with business necessity, and that performance cannot be achieved through reasonable accommodation." Id. at 992-93.

The Court must now turn to Defendant's affirmative defense to determine whether the safety standard is job related and consistent with a business necessity.

### c. Adverse employment action

Defendant concedes that Mr. Littlefield was subject to adverse employment action, as his NHP officer candidacy was rejected. Def. MSJ at 10. However, the Defendant argues that such rejection was not as a result of Mr. Littlefield's disability but because he is a direct threat to himself and others, and because of a legitimate business necessity. These discussions are explored below in examining the Defendant's affirmative defenses.

### *2. Lack of Binocular Vision as Safety Issue*

Defendant's second argument is that Mr. Littlefield is a direct threat to himself and others because he lacks binocular vision and cannot completely and safely perform the essential functions of a Nevada Highway Patrol Officer. Def. MSJ at 10.

The ADA provides several defenses against charges of discrimination. For example, 42 USC 12113(a) provides that, "[i]t may be a defense to a charge of discrimination … that an alleged application of qualification standards, tests, or selection criteria that screen out or tend to screen out or otherwise deny a job or benefit to an individual with a disability has been shown to be job-related and consistent with business necessity, and such performance cannot be accomplished by reasonable accommodation." See Chevron U.S.A. Inc. v. Echazabal, 536 U.S. 73, 78 (2002).

Qualification standards "may include a requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace." 42 USC 12113(b); See Echazabal, 536 U.S. at 78. "Direct threat" means a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation. 29 C.F.R. §1630.2(r). The determination that an individual poses a "direct threat" is based on an individualized assessment of the individual's present ability to safely perform the

essential functions of the job. This assessment is based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence. In determining whether an individual would pose a direct threat, the factors to be considered include: (1) The duration of the risk; (2) The nature and severity of the potential harm; (3) The likelihood that the potential harm will occur; and (4) The imminence of the potential harm. Id. See Echazabal, 536 U.S. at 86.

The Ninth Circuit clarifies that this individualized assessment must happen prior to the exclusion of the individual, as opposed to a retroactive determination: "Before excluding an individual from employment as a direct threat, an employer must demonstrate that it has made an 'individualized assessment' of the employee's ability to perform the essential functions of the job, 'based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence.'" Echazabal v. Chevron USA, Inc., 336 F.3d 1023, 1027 (9th Cir. 2003). The Court noted that "[t]he Supreme Court emphasized the requirement of a 'particularized enquiry into the harms the employee would probably face.'" Id. (quoting Echazabal, 122 S.Ct. at 2053)). Therefore, "[t]his Circuit has held that an employer must gather 'substantial information' about an employee's work history and medical status. The decision must be based upon 'particularized facts using the best available objective evidence as required by the regulations.'" Id. at 1028. Further, "[b]ecause it is an affirmative defense, the employer bears the burden of proving that an employee constitutes a direct threat." Hutton v. Elf Atochem N. Am., Inc., 273 F.3d 884, 893 (9th Cir. 2001) (citing Nunes v. Wal–Mart Stores, Inc., 164 F.3d 1243, 1247 (9th Cir.1999).

The Defendant argues that Mr. Littlefield's condition is indefinite in duration, severe in nature, and likely to lead to great harm if he were an Officer. Def.'s MSJ at 10-12. He therefore poses a direct threat and cannot perform the essential functions of the job of an NHP Officer with or without reasonable accommodation. Id. This conclusion is based off of the application of the Essential Functions requiring binocular vision to the initial medical assessment by Dr. Garcia, who at the time believed Mr. Littlefield was applying to work as an attorney. Id. at 3.

Mr. Littlefield argues that the Defendant failed to conduct an individualized assessment of Plaintiff before concluding that his condition was a direct threat. See Opp. Brief at 9; Mot. Partial Summ. J., ECF No. 28, Ex. 11 p. 33 ("Was there a reason at any time why you didn't continue sending Mr. Littlefield to a[n] independent medical examiner to have his vision tested?" "No.").

The Court finds that the Defendant failed to conduct an additional examination of Mr. Littlefield after learning of his monocular vision, despite having approved him after the initial examination. Instead, Defendant denied Plaintiff's application on the basis of his monocular vision without any further inquiry or follow up. The Defendant has not established that the earlier medical examination and inquiry was sufficiently similar or identical to what would have been the inquiry had the physician known of the actual position for which Littlefield was applying, such that it can now argue that Littlefield received the appropriate individualized assessment before the adverse decision was made. Moreover, the Court rejects Defendant's argument that the retroactive application of the Essential Demands list to the earlier examination constitutes an adequate individualized assessment as required under Echazabal. 336 F.3d at 1027. The Defendant has not met its burden on this issue.

Based on these findings, the Court finds that the Defendant did not conduct an individualized assessment, and therefore cannot maintain that the Plaintiff was a "direct threat." The Court therefore rejects this affirmative defense.

### 3. NHP's Business Necessity for Discrimination

Defendant's third and last argument is a second affirmative defense: that the requirement for monocular vision within the NHP's Essential Demands constitutes a business necessity.

Under the ADA, "[i]t may be a defense to a charge of discrimination under this chapter that an alleged application of qualification standards, tests, or selection criteria that screen out or tend to screen out or otherwise deny a job or benefit to an individual with a disability has been shown to be job-related and consistent with business necessity, and such performance cannot be accomplished by reasonable accommodation, as required under this subchapter." Bates v. United Parcel Serv., Inc., 511 F.3d 974, 989 (9th Cir. 2007) (quoting 42 U.S.C. § 12113(a)).

As is the case here, "when an employer asserts a blanket safety-based qualification standard—beyond the essential job function—that is not mandated by law and that qualification standard screens out or tends to screen out an individual with a disability, the employer—not the employee—bears the burden of showing that the higher qualification standard is job-related and consistent with business necessity, and that performance cannot be achieved through reasonable accommodation. 42 U.S.C. § 12113(a). This approach is parallel to the one adopted in a 'direct threat' case under the ADA. 42 U.S.C. § 12113(b)." Bates, 511 F.3d at 992-93.

First, "[t]o show 'job-relatedness,' an employer must demonstrate that the qualification standard fairly and accurately measures the individual's actual ability to perform the essential functions of the job." Id. at 996. Second, "[t]o show that the disputed qualification standard is 'consistent with business necessity,' the employer must show that it 'substantially promote [s]' the business's needs." Id. (quoting Cripe, 261 F.3d at 890). Last, "to show that 'performance cannot be accomplished by reasonable accommodation,' the employer must demonstrate either that no reasonable accommodation currently available would cure the performance deficiency or that such reasonable accommodation poses an "undue hardship" on the employer." Id. at 996-97.

The Ninth Circuit has found that "[t]he 'business necessity' standard is quite high, and 'is not [to be] confused with mere expediency.' Such a necessity must 'substantially promote' the business' needs." Cripe v. City of San Jose, 261 F.3d 877, 890 (9th Cir. 2001) (quoting Bentivegna v. United States Dep't of Labor, 694 F.2d 619, 621–22 (9th Cir. 1982)). In fact, "the employer must demonstrate that the qualification standard is necessary and related to 'the specific skills and physical requirements of the sought-after position.'" Id. (internal citations omitted). In this Circuit, the business necessity defense is rarely demonstrated: "[w]e have had little occasion to apply that defense, although in one case we held it sufficient to render non-discriminatory a medical examination when an employee's 'health problems have had a substantial and injurious impact on an employee's job performance.'" Id. (quoting Yin v. California, 95 F.3d 864, 868 (9th Cir.1996).

Plaintiff argues that NHP's essential job function contains a blanket policy automatically disqualifying monocular applicants, prohibited by the Ninth Circuit's holding in Bates. See Bates, 511 F.3d at 992-93. Failing to conduct an individualized assessment, required by Ezchazabal, the

Defendant never determined whether Plaintiff could perform the essential job functions taking into consideration his monocular vision. Therefore, Plaintiff argues, invoking the business necessity defense is "indefensible and facially void." Opp'n at 11.

Defendant argues that the essential demands' vision requirement—including binocular vision—is a business necessity. Defendant argues that "[t]he binocular vision requirement substantially promotes NHP's 'business'—the safeguarding of its officers and the public. It is necessary for NHP's operations that it have the vision standards established in the Essential Demands, and such necessity shields NHP from Mr. Littlefield's disability discrimination claim." Def.'s MSJ at 13.

This Court does not find that the business necessity defense expressly requires the "individualized assessment" analysis in Echazabal (F.3d at 1030), which applies to the direct threat affirmative defense. However, having reviewed the Defendant's arguments and evidence in support of the claimed business necessity, the Court finds that the Defendant has failed to meet this high standard. Defendant makes the circular argument that "[t]he Essential Demands are that business necessity; they function as the requirements and standards that constitute a business necessity defense." Def.'s MSJ at 12-13. The only evidence Defendant offers in support of the business necessity defense appears to be a Declaration by Chief Osborn. See Id., Ex. G. Chief Osborn states that he is a career law enforcement officer who has worked with the NHP for over 21 years, and it is his opinion that "a person who is missing one eye…cannot satisfy the job duties of an NHP Officer." Id. at ¶¶ 2, 3. The Court finds that a single Declaration from a single NHP Officer without medical expertise fails to establish even the first requirement "that the qualification standard is (1) 'job-related,'" let alone "(2) 'consistent with business necessity,' and (3) that 'performance cannot be accomplished by reasonable accommodation.'" Bates, 511 F.3d at 995.

### B. Plaintiff's Motion for Partial Summary Judgment (ECF No. 28)

Plaintiff moves for partial summary judgment as to NHP's liability for violating the ADA and N.R.S. § 613.330 on the basis of its automatic disqualification of all applicants with monocular

vision without testing whether they are actually capable of performing the essential functions of the job. Pl.'s Mot. Partial Summ. J., ECF No. 28 at 1.

Defendant disputes Plaintiff's claim that he was automatically disqualified on the basis of his monocular vision. Rather, Defendant argues that "Mr. Littlefield was given the same consideration as any other Nevada Highway Patrol candidate, including after NHP realized he had monocular vision." Opp'n, ECF No. 30 at 3. Further, Defendant argues that "NHP did not 'pressure', 'improperly influence', or 'coerce' Dr. Garcia into rewriting her evaluation of Mr. Littlefield." Id.

After reviewing the record, the Court finds that several material facts remain in dispute and therefore denies Plaintiff's Motion for Partial Summary Judgment. The parties dispute when the NHP learned of Plaintiff's monocular vision, and which position NHP believed he was applying for, in the course of the application process. The parties also dispute whether Dr. Garcia was pressured, influenced, or coerced into rewriting her initial evaluation of Plaintiff Littlefield after July 20, 2012. Further, the Court finds that partial summary judgment in the Plaintiff's favor would preclude NHP from litigating their affirmative defenses.

Therefore, the Court DENIES Plaintiff's Motion for Partial Summary Judgment. ECF No. 28.

### VI. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment (ECF No. 28) is DENIED. **IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 29) is DENIED.

**DATED**: July 15, 2016.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**